UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/1/2020
```

---

Jacqueline Gold,

               Plaintiff,

    –v–

Titlevest Agency LLC, *et al.*,

            Defendants.

---

18-CV-935 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Jacqueline Gold brings this action against her former employer, Defendant Titlevest Agency LLC ("Titlevest") and its parent company, First American Title Insurance Company ("First American"). She alleges claims of employment discrimination on the basis of gender and age, retaliatory termination, and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., the New York State Human Rights Law ("NYSHRL), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107, *et seq*. Before the Court is Defendants' motion for summary judgment. Dkt. No. 52. For the reasons stated below, the motion is GRANTED.

## I.    BACKGROUND

The following facts are drawn from the parties' statements made pursuant to Local Civil Rule 56.1.

In July of 2014, Plaintiff, who was then 49 years old, began working at Titlevest, a title insurance company based in New York City. Plaintiff's Objections and Responses to Defendants' Rule 56.1 Statement ("Plaintiff 56.1"), Dkt. No. 60, ¶¶ 1, 3. Her role was Senior

Vice President of Operations.  *Id.* ¶ 3; Declaration of Justin T. Kelton ("Kelton Dec."), Dkt. No.

64, Exh. 1.  In March of 2015, Titlevest was acquired by First American, a larger title insurance

company that had operations around the country and the globe.  Plaintiff 56.1 ¶¶ 5, 6.  Pursuant

to the acquisition, Brian Tormey, Plaintiff's boss, became President of Titlevest and Vice

President, State Manage of New York for First American's Direct Division.  *Id.* ¶¶ 4, 7, 13.

Plaintiff continued to report to Tormey, who in turn reported to Michael Koors, the First

American regional executive responsible for Direct Division operations in New York.  *Id.* ¶¶ 8,

11, 13.

 During this period, Plaintiff received a number of salary increases and bonuses, one of

which was made in response to an offer that Plaintiff received to join the Federal Reserve Bank.

*Id.* ¶¶ 14, 16, 19, 20.  Also during this period, in February of 2016, Plaintiff complained to

human resources officer Ani Gomez that Tormey was alleged to be giving preferential treatment

to a group of younger, female junior employees.  *Id.* ¶ 45.  She stated that the group was known

as "Brian's Angels."  Defendants claim that Gomez never discussed Plaintiff's complaint with

anyone else, although Plaintiff disputes this.  *Id.* ¶¶ 46-47.  Plaintiff herself does not recall

personally observing Tormey treating these women inappropriately.  *Id.* ¶ 48-50.

 Around early 2017, Koors decided to bring in a First American manager to improve and

oversee Titlevest and First American's operations in New York.  *Id.* ¶ 25.  Koors accordingly

demoted Tormey and replaced him as New York State Manager with John Paku, a longtime First

American employee.  *Id.* ¶¶ 21-22, 26-27.  Paku took his new position in May of 2017.  *Id.* ¶ 29.

In this re-adjusted organizational structure, Paku reported to Koors, and Plaintiff and Tormey in

turn reported to Paku.  *Id.* ¶¶ 30, 31.

A few months later, in August of 2017, Paku, with the approval of Koors, decided to terminate Plaintiff's employment. *Id.* ¶ 12, 36. Defendants claim that Paku eliminated Plaintiff's role in the company in order to create a flatter organizational structure that he believed would improve performance. *Id.* ¶¶ 34-35. Plaintiff claims that this explanation is a pretext and that Plaintiff was in fact terminated in retaliation for her protected reporting. *Id.*

## II.   LEGAL STANDARD

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[I]n making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Furthermore, "[t]he principles governing admissibility of evidence do not change on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Id.* Materials submitted for a summary judgment motion "must be admissible

themselves or must contain evidence that will be presented in an admissible form at trial."
*Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (per curiam).

In seeking summary judgment, the initial "burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant "demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" to survive summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting *Celotex Corp.*, 477 U.S. at 323).

## III.   DISCUSSION

### A.   John Paku's Unavailability

As an initial matter, Plaintiff argues that summary judgment should be precluded, because John Paku was unable to be deposed for this matter. Paku submitted an affidavit under seal explaining that he has stage IV kidney cancer and that as a result of his treatment he "experience[s] challenges" to his "mental clarity and memory loss." As a result, Paku said that he could not participate in any written or oral deposition. At the last status conference, Plaintiff's counsel said that he accepted this explanation. *See* Dkt. No. 67. Plaintiff now contends that Paku actually was capable of testifying, pointing to two Facebook posts that Paku made. One, from December of 2018, announces his kidney cancer diagnosis and the other, from May of 2019, apparently re-posts an older picture. *See* Kelton Dec., Exhs. 11, 12. In the

4

comments to the latter post, friends of Paku wish him well and Paku thanks them.  In one instance he responds that he would like to get together with the commenter.  These Facebook posts do not contradict Paku's sworn statements that he lacked mental clarity, experienced memory loss, and could not be deposed.  Paku never claimed that he was incapable of receiving visitors.  Additionally, Plaintiff was on notice that Paku was not completely incapacitated by his illness and treatment.  After all, he evidently had the mental capacity to execute an affidavit.  The fact that Paku was interviewed by an investigator hired by Defendants after this litigation began also does not contradict Paku's explanation.  That interview happened months before Paku's diagnosis, and Defendants do not seek to use the interview in making their case.  The parties and the Court will have to proceed without deposition testimony from Paku.

**B.      Title VII Discriminatory and Retaliatory Termination Claims**

Plaintiff contends that her termination was the product of unlawful gender discrimination and retaliation for protected reporting.  Under Title VII, gender discrimination and retaliatory termination claims are evaluated under the familiar three-part burden shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Walsh v. N.Y. City Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016); *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  First, the Plaintiff must establish a prima facie case.  For her gender discrimination claim, Plaintiff must demonstrate "that (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination."  *Walsh*, 828 F.3d at 75 (quotation omitted).  For her retaliatory termination claim this involves "showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the

adverse employment action." *Hicks*, 593 F.3d at 164 (quotation omitted).  "The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997) (per curiam).

If the Plaintiff meets the burden of making a *prima facie* case, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory [and nonretaliatory] reason for the adverse employment action." *United States v. Brennan*, 650 F.3d 65, 93 (2d. Cir. 2011) (quotation omitted).  This burden "also is not a demanding one." *Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999).  If Defendants put forth a legitimate, nondiscriminatory, nonretaliatory reason for the termination, the burden shifts back to the Plaintiff.  On summary judgment, this means that for her discrimination claim, "the [P]laintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quotation omitted). For her retaliation claim, the Plaintiff must put forth admissible evidence sufficient to permit a rational factfinder to conclude that retaliation was more likely than not the "but-for" cause of the adverse employment action.  *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

At all times, the Plaintiff retains "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated" and retaliated against her. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quotation omitted).  In Title VII cases, "it is not sufficient for the fact-finder to disbelieve the employer's explanation; rather, 'the fact-finder must believe the plaintiff's explanation of intentional discrimination.'" *Sattar v. Johnson*, 129 F. Supp. 3d 123,

137-38 (S.D.N.Y. 2015) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000)).

Defendants contest that Plaintiff has met her *prima facie* burdens.  They further argue that even if Plaintiff has met this minimal burden, they have proffered a legitimate, nondiscriminatory, nonretaliatory rationale for terminating Plaintiff, and that there is no genuine dispute of material fact as to ultimate question of their intent in terminating Plaintiff.  Assuming that Plaintiff can establish a prima facie case for discrimination, the Court agrees with Defendants that no reasonable jury could find "that the defendant[s'] employment decision was more likely than not based in whole or in part on discrimination."  *Feingold*, 366 F.3d at 152 (quotation omitted).  It further finds that there is no genuine dispute of material fact that Plaintiff has failed to establish a prima facie case on her retaliation claim.

1.    **Defendants' Explanation for Terminating Plaintiff**

There is no genuine dispute of material fact that defendants have put forward evidence supporting their proffered explanation for terminating Plaintiff.  Koors testified that Paku made the decision to eliminate Plaintiff's position in order to create a flatter organization structure that would improve Titlevest's operations.  Koors Tr. 131, 158-164.  Koors testified that he approved of the decision on the same rationale.  *Id.* at 160-63.[1]

Defendants have put forward evidence corroborating this explanation.  First, it is uncontroverted that Paku was brought in because Titlevest was "not meeting our objectives in New York," was experiencing "performance [] lower than anticipated," and that "integration was behind schedule."  Koors Tr. 139-40.  In short, his job was to make changes and improve performance.  Paku then decided to eliminate Plaintiff's position a few months later.  Plaintiff

---

[1] Koors' recollection of his discussion with Paku regarding the elimination of Plaintiff's position is admissible under the state of mind exception to the prohibition on hearsay.  *See* Fed. R. Evid. 803(3).

herself claims that Paku began to phase out her role even earlier than her official termination. *See, e.g.*, Gold Aff., Dkt. No. 63, ¶ 44.

Second, it is undisputed that none of the First American operations in states overseen by Koors had a position like Plaintiff's.  Plaintiff 56.1 ¶ 10; Koors Tr. 83-84.  Despite conceding this fact in her 56.1 response, Plaintiff argues in briefing that Koors stated in his deposition that a role similar to Plaintiff's existed at First American's Rochester office.  *See* Memorandum of Law in Opposition, Dkt. No. 59, at 23.  However, Plaintiff's concession in her 56.1 statement controls for purposes of this motion.  *See* Local Civil Rule 56.1(c).  And regardless, the cited portion of Koor's deposition testimony does not support the assertion in Plaintiff's briefing.  *See* Koors Tr. 22-23.  Koors testified that at the time of the First American's acquisition in Titlevest, First American's pre-existing New York business was run by a "manager" who reported directly to Koors.  *See id.*  The role in question is thus analogous in the "organization structure" to Tormey's or Paku's, not Plaintiff's.

Third, it is undisputed that no one has replaced Plaintiff in her role.  Plaintiff 56.1 ¶ 38.  Furthermore, Tormey testified that he handles some of Plaintiff's former responsibilities along with another employee, which is consistent with the proffered desire to have a flatter organization structure.  Tormey Tr. 31.

Plaintiff argues that the elimination of her position is a pretext because, among other things, she had received praise for her work, had received raises and bonuses, and had been promised a long future at Titlevest, largely by Tormey.  She also notes that after the acquisition by First American, Koors did not plan on terminating her, at least initially.  But even viewing the facts in the light most favorable to Plaintiff, none of this is actually inconsistent with Defendants' explanation for why she was terminated.  Defendants' explanation has less to do with Plaintiff's

performance than it does with the continued necessity of her role.  Additionally, these raises, bonuses, and other praise came exclusively from people other than John Paku.  Yet, it is undisputed that Paku was the principal decisionmaker regarding Plaintiff's termination.  Plaintiff 56.1 ¶ 12.  And even if Koors did not initially intend for Plaintiff to be terminated, the entire crux of Defendants' story is that things with Titlevest were not going according to plan.  That is why they claim that Paku was brought in and Tormey was demoted.

Plaintiff also contends an inference of pretext could be made from the fact that she was not given an opportunity to move into another role, which she claims was typical when a role was eliminated.  However, Plaintiff puts forth no evidence that other employees were given the opportunity to move to a new job within the company when their roles were eliminated.  The cited deposition sections make no mention of this practice.  *See* Koors Tr. 121.[2]  Ultimately, Plaintiff does not put forth evidence of "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, non-[discriminatory] reasons for its action."  *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  Thus, there is no evidence to suggest that Defendants' proffered explanation for Plaintiff's termination is false or pretextual.

### 2.    Discriminatory Termination

Moreover, there is no genuine dispute of material fact on the third prong of the *McDonnell-Douglas* framework, whether "the defendant[s'] employment decision was more likely than not based in whole or in part on discrimination."  *Feingold*, 366 F.3d at 152

---

[2] Plaintiff's briefing cites a portion of the Koors deposition that discusses Plaintiff's employment and job responsibilities.  *See* Koors Tr. 121:17-18.  It may be that Plaintiff actually meant to cite to the same page and line number of Tormey's deposition.  That section, which was incidentally provided by Defendants, discusses employees that were let go or left Titlevest as a result of the acquisition.  However, this testimony also does not discuss employees being offered new positions after their roles were eliminated.

(quotation omitted).  Plaintiff mainly focuses on Brian Tormey.  She alleges that he made several obnoxious comments to her regarding, for example, her compensation and the expendability of her position.  However, she does not allege that Tormey connected these insults to her gender.  The antidiscrimination laws are not protection against an "overbearing or obnoxious boss." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).  Moreover, Plaintiff admitted in her own deposition testimony that in the context of sexual harassment, she does not recall Tormey "speak[ing] to any female employee in an inappropriate way," which forecloses any inference that these comments were related to her gender or support an inference that Tormey had gender-based animus against Plaintiff. Gold Tr. 186:20-22; Plaintiff 56.1 ¶ 49.

Plaintiff also points to Tormey's alleged favoritism for a group of younger, female junior employees, the so-called "Brian's Angels."  The principal manner in which this favoritism was alleged to have manifested itself in the workplace was that Tormey allowed this group of employees to attend management meetings that were typically reserved for more senior employees.  Defendants note that it is undisputed that these employees actually had legitimate business reasons to attend at least some of these meetings.  Plaintiff 56.1 ¶ 56, 57.  But even assuming that the favoritism for "Brian's Angels" was real, Plaintiff does not connect that favoritism to any discriminatory animus against her.  She does not even argue that she was similarly situated in all material respects to the allegedly favored group, which is a predicate to drawing an inference of discrimination from disparate treatment even at the prima facie stage. *See Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014).  Furthermore, it is undisputed that Tormey gave Plaintiff multiple bonuses and raises, including one increased compensation package that kept Plaintiff from leaving Titlevest, all of which undermines the theory that Tormey had any discriminatory animus against Plaintiff. *Cf. Grady v. Affiliated Cent.*, 130 F.3d

553, 560 (2d Cir. 1999) (explaining in a summary judgment opinion that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.").

More importantly, the only proper evidence in the record indicates that Tormey played no role in deciding to terminate Plaintiff. *See* Tormey Tr. 211-13. It is undisputed Paku was the person who actually made the decision to terminate Plaintiff. Plaintiff 56.1 ¶ 12. In attempt to contradict this evidence, Plaintiff points to deposition testimony from Koors that he was under the impression that Paku and Tormey spoke about terminating Plaintiff. *See* Koors Tr. 163:9-12 ("Q: Was Brian consulted on whether or not to terminate Jackie?; A: I believe Brian and John spoke, yes."). She also cites deposition testimony to the same effect from Michael Curley, who was hired to conduct an investigation after this lawsuit was filed. *See* Curley Tr. 127 ("So my recollection and understanding is that the decision loop on that was a decision loop of one, Mr. Paku and he had input on the business side from his colleagues, Mr. Tormey and from his colleague and boss . . . . [i]t was Mr. Paku who made the decision himself and ran it by his boss and discussed it with Mr. Tormey.").

However, as these statements were not made on personal knowledge or are otherwise capable of presentation in an admissible form at trial, they cannot be considered on summary judgment. *See Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999); *see also Commission Sols, Inc. v. CTS Holdings Inc.*, No. 18-1672-cv, 2019 U.S. App. LEXIS 15693, at *5-*6 (2d Cir. May 28, 2019) (Statement beginning "[i]t is my understanding that the sole reason that . . ." cannot be considered on summary judgment); *Rizvi v. Town of Wawarsing*, 654 F. App'x 37, 39 (2d Cir. 2016). Statements cannot be used to support or oppose a motion for summary judgment when "there is no way to ascertain which portions of [the

11

statements] were based on personal knowledge." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988); *see also Woods v. Newburgh Enlarged City Sch. Dist.*, 288 F. App'x 757, 759 (2d Cir. 2008); *Torrel v. City of New York*, 114 F. App'x 14, 16 (2d Cir. 2004). And even if these statements were considered, they would not change the result, because they would show that Tormey had at most a minor role in Plaintiff's termination. Given the absence of evidence that Tormey had gender-based animus towards Plaintiff and the at-most small role he played in her termination, the contention that Tormey contributed discriminatory intent towards the decision to terminate Plaintiff is a speculative and tenuous one.

In an attempt to impute discriminatory intent to Paku, Plaintiff claims that he treated her rudely when he was her supervisor. But Plaintiff admitted in her deposition that she had no idea whether he treated other subordinates the same way. *See* Gold Tr. 207-208. As noted above, the antidiscrimination laws are not protection against an "overbearing or obnoxious boss." *Mihalik*, 715 F.3d 102, 110 (2d Cir. 2013). Plaintiff attempts to retract this concession in an affidavit attached to her opposition. *See* Gold Aff. ¶¶ 42-43. But it is a "well-settled rule" in this Circuit "that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing [her] own prior sworn testimony." *Margo v. Weiss*, 213 F.3d 55, 60 (2d Cir. 2000) (quotation omitted); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 736 (2d Cir. 2010); *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). There is no evidence to suggest that Paku's treatment was gender based.

Given the lack of evidence of discriminatory motive, and the evidence corroborating Defendants' explanation for terminating Plaintiff, no reasonable factfinder could determine that Plaintiff's termination was "more likely than not based in whole or in part on discrimination."

*Feingold*, 366 F.3d at 152 (quotation omitted).  Indeed, Plaintiff's own affidavit and 56.1 response pin her termination on retaliation, without reference to gender-based discrimination.  *Id.* Gold Aff. ¶ 46; Plaintiff 56.1 ¶ 36; *see also* Local Civil Rule 56.1(c).  Defendants are entitled to summary judgment on the discriminatory termination claim.

### 3.        Retaliatory Termination

For her Title VII retaliatory termination claim, Plaintiff argues that several complaints she made to Gomez and Tormey count as protected reporting, but only one appears to qualify. The term protected activity "refers to action taken to protest or oppose statutorily prohibited discrimination."  *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).  A given action "need not rise to the level of a formal complaint in order to receive statutory protection" but can rather include informal complaints to management."  *Id.*  Nor must the conduct complained of actually be illegal.  Rather, Plaintiff must "show that [s]he possessed a good faith, reasonable belief . . . that the employer's conduct qualified as an unlawful employment practice under the statute."  *Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 681 (2d Cir. 2016) (per curiam) (quotation omitted).

Plaintiff first claims that in the Spring and Fall of 2016, she made complaints to Gomez about Tormey's insults regarding her compensation and the expendability of her position, and these qualify as protected reporting.  She does not recall if she used the term sexual harassment in these or any of her conversations with Gomez.  Gold Tr. 173.  Tormey's comments do not have any connection to Plaintiff's gender.  More importantly, Plaintiff conceded that she does not remember hearing Tormey make any sexually harassing comments.  *See* Gold Tr. 186.  Thus, even if these comments were inappropriate, no reasonable factfinder could determine that

Plaintiff had a good faith belief that they were illegal harassment when she complained about them to Gomez.

Plaintiff's briefing also argues that she engaged in protected reporting when she discussed the "Brian's Angels" with Tormey himself.  Plaintiff does not mention this conversation in her affidavit nor does she cite to testimony from her own deposition to support this claim.  In fact, she appears not to remember it.  *See* Gold Tr. 172 (Q: "Did you ever ask Brian Tormey about the term Brian's Angels?" A: "No").  Instead, she cites testimony from Tormey's deposition where he stated that Plaintiff told him that Brian's Angels was a term that was going around the office, and that in the same conversation Plaintiff "expressed disbelief in the applicability of it," "conveyed that . . . she didn't believe I had done anything inappropriate," and "discussed what I could do differently to help change any potential perception that there was."  Tormey Tr. 201-202.  She also cites to deposition testimony from Defendants' investigator to the same affect.  Curley Tr. 81-82.  Because the only evidence in the record regarding this conversation shows that Plaintiff did not "ever mention[], or even allud[e] to, [her] belief [Tormey's actions] would constitute unlawful discrimination" no reasonable finder of fact could conclude that the conversation qualified as protected reporting.  *Cook v. CBS, Inc.*, 47 F. App'x 594, 596 (2d Cir. 2002); *see also Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) (for a Title VII retaliation claim, defendant must have "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII.").

Plaintiff also claims that she engaged in protected reporting when she reported an incident in June 2017 to Gomez where Tormey drank too much with one of the Brian's Angels, stayed out until 4:00 a.m., and was ultimately thrown out of a hotel.  *See* Gold Aff. ¶ 35.

14

Plaintiff did not personally observe this incident but heard about it from others. While this incident was previously discussed at depositions and in the First Amended Complaint, the affidavit that Plaintiff attached to her opposition appears to be the first time that she ever claimed to have reported the incident in this case. *See Kizer v. Abercrombie & Fitch Co.*, No. 12-cv-5387, 2018 U.S. Dist. LEXIS 198718, at *6 n.4 (E.D.N.Y. Nov. 20, 2018) (holding that plaintiffs "cannot amend their complaint simply by alleging new facts and theories" at the summary judgment stage) (quotation omitted); *Toussaint v. NY Dialysis Servs.*, 230 F. Supp. 3d 198, 214 (S.D.N.Y. 2017). When asked why she thought the June 2017 incident was inappropriate, Plaintiff responded, "[y]ou shouldn't be out till four o'clock in the morning with an employee and getting thrown out of a hotel." Gold Tr. 203. She further admitted that this rationale would likewise apply even if Tormey was with another male employee. Gold Tr. 204. This explanation has no connection to gender. Even if this new allegation could be considered, based on Plaintiff's own statements, no reasonable factfinder could conclude that Plaintiff possessed a "a good faith, reasonable belief" that Tormey's conduct was gender-based discrimination and that Plaintiff's complaint about it constituted protected reporting. *Cooper*, 819 F.3d at 681 (quotation omitted).

That leaves Plaintiff's claim that she complained to Gomez about the favoritism Tormey showed to "Brian's Angels." The First Amended Complaint alleges one instance of reporting by Plaintiff about this group. *See* First Amended Complaint, Dkt. No. 12, ¶ 57. Plaintiff testified at her deposition that she told Gomez that "[p]eople are talking about Brian's Angels," explained who the employees involved were, and said that Gomez "need[ed] to do something, because he's putting our company at risk." Gold Tr. 172-74. Plaintiff testified that the "at risk" comment was

a reference to sexual harassment and discrimination, although she does not remember if she actually used those terms.  *Id.*

Assuming that this qualifies as protected reporting, the Court concludes that no reasonable factfinder could find that retaliation for this reporting more likely than not played any causal role in Plaintiff's termination.   At the prima facie stage, a plaintiff in a Title VII case can establish a causal connection between protected reporting and an adverse employment action through one of two ways: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (quotation omitted).  Plaintiff does not allege that fellow employees were also punished, nor does she put forth any direct evidence of retaliatory animus.

Instead, Plaintiff argues that a causal relationship can be inferred from the temporal proximity between her complaint and her termination.  During her deposition, Plaintiff testified that her complaint to Gomez about "Brian's Angels" took place in February of 2016. Specifically, when asked "[w]hen did you discuss the term Brian's Angels with Ms. Gomez?," Plaintiff responded "[s]oon after I heard it from Thomas Hug."  Gold Tr. 172.  Plaintiff also testified that she heard the comment from Hug in February 2016.  Gold Tr. 170.  In her opposition and her affidavit attached to her opposition, Plaintiff attempts to shift the time frame forward, claiming that her complaints actually took place as late as February 2017.  However, as noted above, "a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing [her] own prior sworn testimony."  *Margo*, 213 F.3d at 60 (quotation omitted).

The Court therefore proceeds on the premise that Plaintiff's complaint took place in February 2016.  The Second Circuit has refrained from drawing a "bright line" to define "the outer limits beyond which a temporal relationship is too attenuated to establish causation" in retaliation cases.  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).  However, Plaintiff cites to no authority to support the proposition that an eighteen-month gap between protected reporting and an adverse employment action is sufficiently close to infer causation.  The Supreme Court has cited with approval Title VII cases holding that three and four-month gaps are insufficient to establish causation and itself held that a twenty-month gap "suggests, by itself, no causality at all."  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam); *see also Perry v. NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011) (holding that an eleven-month gap between reporting and adverse employment action is by itself insufficient to suggest a plausible causal connection).  Accordingly, Plaintiff's argument that the temporal proximity between her complaint and her termination can establish a causal connection fails.  No reasonable factfinder could conclude that retaliation for protected reporting played any role in Plaintiff's termination.  Defendants are entitled to summary judgment on the retaliatory termination claim.

### C.    NYSHRL and NYCHRL Termination Claims

Plaintiff's gender discrimination and retaliation claims under the NYSHRL are assessed under the Title VII standard.  *See Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010).  Defendants are accordingly entitled to summary judgment on the NYSHRL claims alleging that Plaintiff's termination was based on gender discrimination or retaliation.

Plaintiff's claims relating to her termination under the NYCHRL are also evaluated under a similar framework.  While the NYCHRL's protections cover a broader swath of conduct than

Title VII's, the inquiries under both statutes of whether conduct was discriminatory or retaliatory "closely mirror[]" each other. *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 n.13 (2d Cir. 2015). First, the plaintiff must "establish a prima facie case, and the defendant then has the opportunity to offer legitimate reasons for its actions." *Id.* 75-76. If the defendant satisfies that burden then it can obtain summary judgment if "the record establishes as a matter of law that discrimination or retaliation played no role in the defendant's actions." *Id.* at 76. Thus, the causation inquiry for a NYCHRL discrimination claim is practically the same as Title VII's; while the causation inquiry for a NYCHRL retaliation claim differs from Title VII only in that retaliation need not be the but-for cause of the employer's decision. Plaintiff's Title VII and NYCHRL gender discrimination and retaliation claims do not implicate any of the differences between what is covered by each statute. Therefore, the results for both claims should be the same. As explained above, no reasonable factfinder could conclude that gender-based discrimination or retaliation played any part in Plaintiff's termination. Defendants are entitled to summary judgment on these NYCHRL claims.

Furthermore, summary judgment is also appropriate for any remaining NYSHRL and NYCHRL age discrimination claims. In this case, Plaintiff initially brought ADEA, NYSHRL, and NYCHRL age discrimination claim related to her termination. However, she later voluntarily dismissed the federal ADEA claim. Dkt. No. 49. To the extent there are any NYSHRL and NYCHRL age discrimination claims remaining, they fail for the same reasons that Plaintiff's gender discrimination claims do. There is simply scant evidence that Plaintiff's termination was illegitimate. No reasonable finder of fact could conclude that age discrimination more likely than not played any role in Plaintiff's termination. In her deposition testimony, Plaintiff herself said she did not know if she believed that she was terminated because of age

discrimination and conceded that she had no evidence to support the claim that she was.  Gold Tr. 216.

D.    **Hostile Work Environment Claims Under Title VII, the NYSHRL, and the NYCHRL**

Plaintiff also brings claims under Title VII, the NYSHRL, and the NYCHRL that she suffered a gender-based hostile work environment.  Under Title VII and the NYSHRL, Plaintiff must show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) (quotations omitted); *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999).  Furthermore, Plaintiff "must demonstrate that the conduct occurred because of her sex.  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

The standard for a NYCHRL hostile work environment claim is less stringent.  Plaintiff need only demonstrate that "she was treated 'less well' because of her gender."  *Mihalik*, 715 F.3d at 110 (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39, 41 (N.Y. App. Div. 2009)).  Unlike Title VII, whether a statement or incident is "isolated" is "irrelevant" under the NYCHRL.  *Hernandez v Kaisman*, 957 N.Y.S.2d 53, 59 (N.Y. App. Div. 2012).  However, under the NYCHRL Defendants can "assert an affirmative defense whereby [they] can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences." *Mihalik*, 715 F.3d at 111 (quotation omitted).  Ultimately, Defendants are entitled to summary judgment even under both the relaxed standard of the NYCHRL, and the severe and pervasive standard of Title VII and the NYSHRL.

First, Tormey's treatment of the "Brian's Angels" cannot provide a basis for hostile work environment claims under Title VII, the NYSHRL, or the NYCHRL. At her deposition, Plaintiff testified that she never saw Tormey inappropriately touch any of these women, never personally observed them socializing outside of work, and did not recall hearing Tormey say anything to them that constituted sexual harassment. Gold Tr. 173-74, 186, 201-02. It is well established that Title VII's and the NYSHRL's "prohibition against hostile work environment discrimination affords no claim to a person who experiences it by hearsay." *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 182 (2d Cir. 2001). And while there is some authority to suggest that NYCHRL can in some instances cover conduct that is not personally experienced by a plaintiff, these cases involve conduct that actually affects or concerns the plaintiff—for example a situation where "colleagues repeatedly mocked [a plaintiff's] sexual orientation behind his back" and the "plaintiff learned about this behavior." *Sletten v. LiquidHub, Inc.*, No. 13-cv-1146, 2014 U.S. Dist. LEXIS 94697, at *24-*25 (S.D.N.Y. July 10, 2014); *see also Garrigan v. Ruby Tuesday, Inc.*, No. 14-cv-155, 2014 U.S. Dist. LEXIS 70467, at *10 (S.D.N.Y. May 22, 2014). In contrast to these cases, Plaintiff never explains how Tormey's alleged favoritism for the "Brian's Angels" caused *her* to be treated less well. To the contrary, it is undisputed that Tormey supported substantial salary increases and bonuses for Plaintiff. Plaintiff 56.1 ¶¶ 15, 16, 19. And although Plaintiff takes issue with barbs made by Tormey regarding her compensation and the expendability of her position, there is nothing about those comments to suggest that they were related to gender. Plaintiff herself testified that she does not remember Tormey saying anything "inappropriate" to any female employee. Gold Tr. 186. Based on this record, no reasonable factfinder could determine that Tormey treated Plaintiff less well because of her gender.

Nor could a reasonable factfinder determine that other conduct pointed to by Plaintiff is actionable under Title VII, the NYSHRL, and the NYCHRL.  Plaintiff claims that in March of 2017, she was taken off the email distribution list for monthly financial reports.  However, she adduces no evidence that this was related to her gender.  In fact, it is undisputed that the Plaintiff does not even know who determined the recipients of the reports.  Plaintiff 56.1 ¶ 42.  No reasonable factfinder could conclude that Plaintiff stopped receiving the reports because of her gender.

Plaintiff also claims that Tormey excluded her from the salary adjustment and promotion process by sending an email to Koors regarding those subjects on which she was not copied.  She then claims that Koors included her on the next email.  Plaintiff 56.1 ¶ 43.  Plaintiff again puts forth no evidence that this exclusion was related to her gender.  She testified that she did not know why she was excluded and that she did not know who made the decision to have Tormey leave her off the email.  Gold Tr. 117.  Additionally, even if this incident was motivated by gender-bias, being left off of an email and then included on the next one in the chain is surely the kind of "petty slight[] and trivial inconvenience[]" that is not protected by the NYCHRL, much less Title VII.  *Mihalik*, 715 F.3d at 111.  No reasonable factfinder could conclude that Plaintiff's exclusion from this email was actionable under Title VII, the NYSHRL, or the NYCHRL.

Additionally, Plaintiff claims that Paku treated her rudely during the few months for which he was her supervisor.  But Plaintiff adduces no evidence that this conduct was related to her gender.  Indeed, as noted above, she testified that the does not know if Paku treated male subordinates the same way.  *See* Gold Tr. 207-208.  As the Second Circuit has noted, "the NYCHRL is not a general civility code."  *Mihalik*, 715 F.3d at 110 (quotation omitted).  No reasonable factfinder could determine that Paku treated Plaintiff less well because of her gender.

Finally, Plaintiff claims that Koors abruptly stopped meeting with her in the Spring of 2017. The only evidence she cites for this proposition is deposition testimony from Koors where he stated that he stopped meeting with her after John Paku was brought into Titlevest. Koors Tr. 66. Koors further testified that he generally stopped dealing with Titlevest subordinates after this point. Koors Tr. 150-51. No reasonable factfinder could conclude that Koors stopped meeting with Plaintiff because of her gender.

Defendants are entitled to summary judgment on the Plaintiff's Title VII, NYSHRL, and NYCHRL hostile work environment claims.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to enter judgment and close this case.

This resolves Dkt. No. 52.

Dated:  June 1, 2020
        New York, New York

_____
        ALISON J. NATHAN
        United States District Judge